SKC

**WO**

# IN THE UNITED STATES DISTRICT COURT

# FOR THE DISTRICT OF ARIZONA

Robert F. Lindley, Jr.,

               Plaintiff,

v.

Corizon Health, et al.,

               Defendants.

No.  CV 18-01860-PHX-DGC (JFM)

**ORDER**

Pending before the Court is pro se Plaintiff's "Expedited Motion to Alter the Judgement Pursuant to F.R.C.P. 59(e)" (Doc. 138).  Plaintiff seeks reconsideration of that part of the Court's April 9, 2020 Order granting summary judgment to Defendant Dr. Itoro Elijah on Plaintiff's Eighth Amendment medical care claims and requests that Dr. Elijah be re-instated as a Defendant in this action.  The Court will deny the Motion.

**I.      Legal Standard**

Rule 59(e) governs motions "to alter or amend a judgment."  Fed. R. Civ. P. 59(e).  A "judgment" is defined in the Federal Rules of Civil Procedure as "any order from which an appeal lies."  Fed. R. Civ. P. 54.  "Thus, the word 'judgment' encompasses final judgments and appealable interlocutory orders."  *Balla v. Idaho State Bd. of Corrs.*, 869 F.2d 461, 466 (9th Cir. 1989).

"A Rule 59(e) motion should not be granted 'unless the district court is presented with newly discovered evidence, committed clear error, or if there is an intervening change in the controlling law.'"  *McQuillion v. Duncan*, 342 F.3d 1012, 1014 (9th Cir.2003)

(quoting *McDowell v. Calderon*, 197 F.3d 1253, 1255 (9th Cir. 1999) (en banc)).  Such motions are disfavored and are not the place for parties to make new arguments not raised in their original briefs.  *See* LRCiv 7.2(g); *Defenders of Wildlife v. Browner*, 909 F. Supp. 1342, 1351 (D. Ariz. 1995).  Nor should such motions ask the Court to "rethink what the court has already thought through—rightly or wrongly."  *See United States v. Rezzonico*, 32 F. Supp. 2d 1112, 1116 (D. Ariz. 1998) (quoting *Above the Belt, Inc. v. Mel Bohannon Roofing, Inc.*, 99 F.R.D. 99, 101 (E.D. Va. 1983)).

## II.  Discussion

Plaintiff's Eighth Amendment medical care claims arise from Defendants Corizon Health ("Corizon"), Utilization Management Team (UMT) Director Ayodeji Ladele, and Dr. Elijah's alleged deliberate indifference to Plaintiff's serious medical needs associated with a brain cyst and shunt.  (Doc. 7.)  In its April 9, 2020 Order, the Court granted summary judgment to Defendants Ladele and Dr. Elijah and denied summary judgment to Corizon.  (Doc. 135.)  The Order dismissed Defendants Ladele and Dr. Elijah with prejudice and is therefore final and appealable as to these Defendants.  Plaintiff argues that the Court should reinstate Dr. Elijah because newly discovered evidence related to his sinusitis and eye constriction shows that she was deliberately indifferent to his serious medical needs.  (Doc. 138 at 1.)[1]

### A.  Sinusitis

Plaintiff previously argued in response to Defendants' Motion for Summary Judgment that Dr. Elijah was deliberately indifferent to his serious medical needs in part because she failed to discuss or respond to the results of his December 8, 2016 MRI, showing that, in addition to his known arachnoid cyst, he had sinusitis and a new sinus mucous retention cyst.  (Doc. 124 at 10; Doc. 120-1 at 3.)  The MRI results specifically

---

[1] To the extent Plaintiff also inserts into his Motion various arguments which he could have made earlier in response to Defendants' Motion for Summary Judgment or which merely ask the Court to "rethink what the court has already thought," the Court will not address these additional arguments.  *See* LRCiv 7.2(g); *Defenders of Wildlife*, 909 F. Supp. at 1351; *Rezzonico*, 32 F. Supp. 2d at 1116.

noted that Plaintiff had "[m]oderate ethmoid and mild maxillary sinusitis" and a new "sphenoid sinus mucous retention cyst." (*See* Doc. 138 at 10.)

The Court found on summary judgment that Defendants had produced sufficient evidence to show that Dr. Elijah regularly responded to and did not deliberately disregard Plaintiff's serious medical needs associated with his arachnoid cyst and shunt, and that "Plaintiff fail[ed] to present any medical evidence that his sinusitis and sinus mucous retention cyst were serious medical needs that required additional treatment at the time or that he suffered any harm due to Dr. Elijah's alleged failure to separately address these issues." (Doc. 135 at 13−14)

Plaintiff now produces a January 7, 2020 Consultation Report which shows that outside provider J. Osborne diagnosed him with chronic sinusitis and nasal polyps and recommended sinus surgery. (*Id.* at 8.) Plaintiff argues that this evidence shows that Dr. Elijah was deliberately indifferent when she ignored the sphenoid mucus cyst shown on his December 8, 2016 MRI. (*Id.* at 1−3.)

The Court is not persuaded. Although the January 20, 2020 Consultation Report may show that Plaintiff now has a serious medical need requiring sinus surgery, this showing is insufficient to create a genuine issue of material fact as to whether Dr. Elijah both knew of and deliberately disregarded serious medical needs of Plaintiff when she ordered and presumably became aware of Plaintiff's December 8, 2016 MRI. *See Farmer v. Brennan*, 511 U.S. 825, 837 (1994) (an official shows deliberate indifference when she "knows of and disregards an excessive risk to inmate health or safety"). There is simply no evidence that Plaintiff's sinusitis—which the December 2016 MRI showed was mild to moderate—or his mucous retention cyst required treatment more than three years prior to the evidence Plaintiff now provides. There is also no medical evidence, and Plaintiff provides no affidavit testimony, regarding what prompted the outside consult or what symptoms and findings Osborn relied on to determine that Plaintiff had chronic sinusitis and nasal polyps and needed surgery, from which a reasonable jury could infer that Plaintiff had these same conditions and need in 2016. Plaintiff therefore fails to create a triable

- 3 -

issue of fact that Dr. Elijah was both "aware of facts from which the inference could be drawn that a substantial risk of serious harm exist[ed], and [s]he [drew] the inference." *Farmer*, 511 U.S. at 837.  There is also no evidence that Plaintiff suffered serious harm due to Dr. Elijah's alleged failures to properly treat his mild to moderate sinusitis or mucous retention cyst during the period from late-2016 to mid-2017 when Plaintiff was in her care.

### B. Eye/Vision Complaints

Plaintiff also argues that newly available evidence shows that Dr. Elijah was deliberately indifferent to his serious medical needs related to his eye pressure and vision issues because she failed to order "Hall Pike" testing, as part of the alternative treatment plan (ATP) issued by the UMT in March 2018.  (Doc. 138 at 2.)[2]  Plaintiff produces reports of outside ophthalmology exams he received from Dr. Warren H. Heller on September 4 and December 30, 2019, which he believes met "the 'Hall Pike' test standard."  (*Id.* at 4, 13−14.)  Dr. Heller found that Plaintiff had a "nonspecific constriction" of both eyes and recommended two-month and three-month follow ups (respectively) to "see if there is any change" and − when there was no change − for a neurologist to determine whether any more investigation or tests should be done.  (*Id.*)  Plaintiff argues that this evidence shows that Dr. Elijah should have "carried out the U.M.T. for a field vision test, but NEVER did," which is "just one more example of deliberate indifference."  (*Id.* at 4.)

Aside from being inconclusive as to the cause or seriousness of Plaintiff's "nonspecific constriction" of both eyes, Dr. Heller's reports provide no new evidence showing that Dr. Elijah was deliberately indifferent to any known serious eye or vision issues.  Even assuming that the "Hall Pike" tests recommended in the March 2018 ATP were provided for the first time as part of Dr. Heller's exams more than a year and a half later, there is no evidence Dr. Elijah was aware of this ATP, was responsible for conducting or scheduling the Hall Pike test, or had any ongoing involvement in Plaintiff's medical care

---

[2] Defendants did not provide any evidence on summary judgment regarding "Hall Pike" testing, but available information online shows that it is a method used for testing vertigo. *See* https://www.webmd.com/brain/dix-hallpike-test-vertigo (last visited April 20, 2020).

at that time.[3]  The available medical record evidence shows, instead, that Dr. Elijah last saw Plaintiff on July 18, 2017 (Doc. 120 ¶ 6), approximately 8 months before the ATP was issued.  There is also no evidence that Dr. Elijah showed deliberate indifference to Plaintiff's eye complaints at any prior time.  The evidence already set forth on summary judgment shows that in March 2017 Dr. Elijah noted to follow up on Plaintiff's optometry evaluation and, on May 3, 2017, performed a Snellen eye test and noted to reorder an optometry evaluation.  (Doc. 120-1 at 18, 22.)  These facts do not show that she deliberately disregarded Plaintiff's eye complaints, and Dr. Heller's exams and reports more than two years later add nothing to the record that would change this showing.

**IT IS ORDERED** that the reference to the Magistrate Judge is **withdrawn** as to Plaintiff's "Expedited Motion to Alter the Judgement Pursuant to F.R.C.P. 59(e)" (Doc. 138) and the Motion is **denied**.

Dated this 29th day of April, 2020.

David G. Campbell
Senior United States District Judge

---

[3] The Court already found that the lack of evidence that Plaintiff received Hall Pike testing and other care recommended in his ATPs created questions of fact that Corizon was deliberately indifferent to his serious medical needs and had a policy and practice of deliberate indifference.  The Court denied summary judgment to Corizon based, in part, on these questions of fact.  (*See* Doc. 135 at 17, 21, 22.)